No. 23-_____

# In the United States Court of Appeals for the Fifth Circuit

―――――――

Career Colleges & Schools of Texas,

*Plaintiff-Appellant,*

v.

United States Department of Education, et al.,

*Defendants-Appellees.*

―――――――

On Appeal from the United States District Court
for the Western District of Texas, Austin Division
No. 1:23-cv-00433-RP

―――――――

## PLAINTIFF-APPELLANT'S OPPOSED EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL

―――――――

Philip Vickers
Katherine Hancock
CANTEY HANGER LLP
600 West 6th Street, Suite 300
Fort Worth, TX 76102
pvickers@canteyhanger.com
(817) 877-2800

Allyson B. Baker*
Stephen Kinnaird
Michael Murray*
Sameer P. Sheikh*
Tor Tarantola*
PAUL HASTINGS LLP
2050 M Street NW
Washington, DC 20036
stephenkinnaird@paulhastings.com
(202)-551-1700

*Counsel for Plaintiff-Appellant*

* Application for admission or readmission pending.

# CERTIFICATE OF INTERESTED PERSONS

No. 23-_____

*Career Colleges & Schools of Texas v. U.S. Dep't of Educ., et al.*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| | |
|---|---|
| Plaintiff-Appellant: | Career Colleges & Schools of Texas |
| Counsel for Plaintiff-Appellant: | PAUL HASTINGS LLP<br>Allyson B. Baker (allysonbaker@paulhastings.com)<br>Stephen Kinnaird (stephenkinnaird@paulhastings.com)<br>Michael Murray (michaelmurray@paulhastings.com)<br>Sameer P. Sheikh (sameersheikh@paulhastings.com)<br>Tor Tarantola (tortarantola@paulhastings.com)<br><br>CANTEY HANGER LLP<br>Philip Vickers (pvickers@canteyhanger.com)<br>Katherine Hancock (khancock@canteyhanger.com) |
| Plaintiff-Appellant's member schools participating in the William D. Ford Federal Direct Loan Program: | Arlington Career Institute<br>Asher College<br>Auguste Escoffier School of Culinary Arts<br>Avenue Five Institute<br>Center for Advanced Legal Studies<br>Collectiv Academy<br>Concorde Career College, Dallas<br>Concorde Career College, Grand Prairie<br>Concorde Career College, San Antonio<br>Culinary Institute LeNotre<br>Deluxe Barber College<br>ECPI University<br>Fortis College, Houston South |

Fortis Institute, Houston North
Lincoln College of Technology
McAllen Careers Institute
Ogle School Hair Skin Nails, Arlington
Ogle School Hair Skin Nails, Dallas
Ogle School Hair Skin Nails, Denton
Ogle School Hair Skin Nails, Fort Worth
Ogle School Hair Skin Nails, Houston
Ogle School Hair Skin Nails, Hurst
Ogle School Hair Skin Nails, North Dallas
Ogle School Hair Skin Nails, San Antonio
PCI Health Training Center, Dallas
PCI Health Training Center, Richardson
Pima Medical Institute
Pima Medical Institute, San Antonio
Southern Careers Institute, Austin
Southern Careers Institute, Brownsville
Southern Careers Institute, Corpus Christi
Southern Careers Institute, Harlingen
Southern Careers Institute, Pharr
Southern Careers Institute, San Antonio North
Southern Careers Institute, San Antonio South
Southern Careers Institute, Waco
Southwest University at El Paso
The College of Health Care Professions, Austin
The College of Health Care Professions, Dallas
The College of Health Care Professions, Fort Worth
The College of Health Care Professions, Houston
    Southwest
The College of Health Care Professions, McAllen
The College of Health Care Professions, Northwest
The College of Health Care Professions, San Antonio
The College of Health Care Professions, San Antonio
    South
The Ocean Corporation
Tulsa Welding School & Technology Center
Vogue College of Cosmetology, Fredericksburg Rd.
Vogue College of Cosmetology, Ingram Rd.
Vogue College of Cosmetology, Lubbock
Vogue College of Cosmetology, McAllen

| | |
|---|---|
| | West Coast University |
| | Western Technical College, Main |
| Defendants-Appellees: | United States Department of Education |
| | Miguel Cardona, in his official capacity as Secretary of Education |
| Counsel for Defendants-Appellees: | United States Department of Justice |
| | Brian M. Boynton |
| | Marcia Berman |
| | Christine L. Coogle (christine.l.coogle@usdoj.gov) |
| | Cody T. Knapp (cody.t.knapp@usdoj.gov) |
| | R. Charlie Merritt (robert.c.merritt@usdoj.gov) |
| Other interested entities: | Career Education Colleges and Universities |
| | Institutions that participate in Title IV programs (see list at https://fsapartners.ed.gov/knowledge-center/library/federal-school-code-lists/2023-04-27/2023-24-federal-school-code-list-participating-schools-may-2023) |

/s/ *Stephen B. Kinnaird*
Stephen B. Kinnaird

*Attorney of record for*
*Plaintiff-Appellant*

**TABLE OF CONTENTS**

Introduction and Nature of Emergency ............................................................ 1

Statement.................................................................................................4

Standard ..................................................................................................8

Argument .................................................................................................8

    I.   Likelihood of Success on the Merits...........................................8

      A.   The Department lacks authority to adjudicate borrower-defense "claims" or recoupment actions. ...........................................8

      B.   The Rule's borrower defenses, evidentiary presumptions, and full-discharge remedy are unlawful. .................................12

    II.   Irreparable Harm ....................................................................17

      A.   Compelled Compliance and Compliance Costs....................18

      B.   Change in Conduct to Avoid Risk of Closed-School Liability ............21

      C.   Threat of Unlawful Adjudications ......................................21

    III.   Harm to the Department........................................................22

    IV.   The Public Interest ...............................................................23

Conclusion .............................................................................................23

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*,
  141 S. Ct. 2485 (2021) ....................................................................... 12

*Bank One Chicago, N.A. v. Midwest Bank & Trust Co.*,
  516 U.S. 264 (1996) ............................................................................. 9

*Canal Auth. of State of Fla. v. Callaway*,
  489 F.2d 567 (5th Cir. 1974) ............................................................ 17

*Chemical Mfrs. Ass'n v. Dep't of Transp.*,
  105 F.3d 702 (D.C. Cir. 1997) .......................................................... 16

*Coit Indep. Joint Venture v. Fed. Sav. & Loan Ins. Corp.*,
  489 U.S. 561 (1989) ............................................................................. 9

*Equitable Equip. Co. v. Director, Office of Worker's Comp.
Programs*,
  191 F.3d 630 (5th Cir. 1999) .............................................................. 9

*FCC v. Prometheus Radio Project*,
  141 S. Ct. 1150 (2021) ....................................................................... 15

*Fed. Maritime Comm'n v. S.C. State Ports Auth.*,
  535 U.S. 743 (2002) ........................................................................... 10

*First Pentecostal Church of Holly Springs v. City of Holly Springs*,
  959 F.3d 669 (5th Cir. 2020) ..................................................... *passim*

*FTC v. Dean Foods Co.*,
  384 U.S. 597 (1966) ............................................................................. 2

*Granfinanciera, S.A., v. Nordberg*,
  492 U.S. 33 (1989) ............................................................................. 10

*Jarkesy v. SEC*,
  34 F.4th 446 (5th Cir. 2022) .............................................................. 11

*Mathews v. Eldridge*,
    424 U.S. 319 (1976)..............................................................................17

*Mock v. Garland*,
    No. 23-10319 (5th Cir., May 23, 2023)...............................................8

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983)................................................................................13

*Murray's Lessee v. Hoboken Land & Improvement Co.*,
    59 U.S. 272 (1855)................................................................................11

*Nat'l Fuel Gas Supply Corp. v. FERC*,
    811 F.2d 1563 (D.C. Cir. 1987)............................................................9

*Pacific Frontier v. Pleasant Grove City*,
    414 F.3d 1221 (10th Cir. 2005) ..........................................................18

*Rest. L. Ctr. v. U.S. Dep't of Lab.*,
    66 F.4th 593 (5th Cir. 2023) ...............................................17, 19, 20

*RLC Indus. Co. v. CIR*,
    58 F.3d 413 (9th Cir. 1995) ..................................................................9

*Roark & Hardee LP v. City of Austin*,
    522 F.3d 533 (5th Cir. 2008) ..............................................................22

*United States ex rel. Schutte v. SuperValu Inc.*,
    143 S. Ct. 1391 (2023).........................................................................14

*Stern v. Marshall*,
    564 U.S. 462 (2011)..............................................................................10

*Texas v. EPA*,
    829 F.3d 405 (5th Cir. 2016) ..............................................................18

*Thomas v. Union Carbide Agric. Prod. Co.*,
    473 U.S. 568 (1985)..............................................................................22

*Tull v. United States*,
    481 U.S. 412 (1987)..............................................................................11

*United States v. Baylor Univ. Med. Ctr.*,
711 F.2d 38 (5th Cir. 1983) ...............................................................23

*United States v. Nordic Village, Inc.*,
503 U.S. 30 (1992)................................................................................9

*Wages & White Lion Invs., L.L.C. v. U.S. Food & Drug Admin.*,
16 F.4th 1130 (5th Cir. 2021) ...........................................................19

*Weingarten Realty Invs. v. Miller*,
661 F.3d 904 (5th Cir. 2011) .........................................................8, 23

*West Virginia v. EPA*,
142 S. Ct. 2587 (2022)........................................................................12

*Wildmon v. Berwick Universal Pictures*,
983 F.2d 21 (5th Cir. 1992) .................................................................8

**Statutes**

5 U.S.C.

§ 705................................................................................................1
§ 706(2)(A) ....................................................................................13

20 U.S.C.

§ 1078e(a)(1)................................................................................10
§ 1087(c)(1) .................................................................10, 11, 17
§ 1087e(h) ..........................................................2, 8, 12, 13
§ 1099c(c) .....................................................................................22

Higher Education Act.........................................................*passim*

**Reguations**

34 C.F.R.

§ 668.71(a)(1)-(4) ........................................................................14
§ 668.71(c) ...........................................................................5, 14
§ 668.75....................................................................5, 13, 14
§ 668.117(b) ...................................................................................7
§ 668.125.........................................................................................6

§ 668.125(d) ............................................................................................ 7

§ 668.125(e)(2) .............................................................................. 5, 7, 14

§ 668.171 ................................................................................................ 22

§ 668.501 ................................................................................................ 13

§ 685.206(c)(1) ......................................................................................... 5

§ 685.206(c)(3) ......................................................................................... 7

§ 685.206(e)(6) ......................................................................................... 7

§ 685.206(e)(12) ....................................................................................... 5

§ 685.214(a)(2)(i) ................................................................................ 6, 17

§ 685.222(c) .............................................................................................. 7

§ 685.222(d)(1) ......................................................................................... 7

§ 685.401(a)-(b) ................................................................................. 6, 14

§ 685.401(b) ......................................................................................... 5, 7

§ 685.401(b)(5) ......................................................................................... 7

§ 685.401(e) ...................................................................................... 6, 15

§ 685.402 .................................................................................................. 5

§ 685.403 .................................................................................................. 5

§ 685.405 ............................................................................................ 5, 22

§ 685.406(b)(2) .................................................................................. 5, 15

§ 685.406(b)-(c) ....................................................................................... 5

§ 685.407 .................................................................................................. 5

§ 685.409(c)(2) ......................................................................................... 7

§ 685.409(c)(3) .................................................................................. 7, 20

59 Fed. Reg. 61664 (Dec. 1, 1994) ......................................................... 9

81 Fed. Reg. 75926 (Nov. 1, 2016) .................................................. 10, 11

87 Fed. Reg. 65904 (Nov. 1, 2022) ................................................ *passim*

## INTRODUCTION AND NATURE OF EMERGENCY[1]

Plaintiff-appellant Career Colleges and Schools of Texas ("CCST") respectfully requests that the Court issue an injunction pending appeal staying the effective date of the challenged rule governing student-loan discharges, 87 Fed. Reg. 65904 (Nov. 1, 2022) (the "Rule"), App.337-506. *See* Fed. R. App. P. 8(a)(2); 5 U.S.C. § 705. On July 1, 2023—tomorrow—the Rule goes into effect. *See* 87 Fed. Reg. 65904.

On April 5, 2023, CCST moved for a preliminary injunction. The district court granted Defendants the U.S. Department of Education and Secretary of Education Miguel Cardona (collectively "the Department") a multi-week extension until May 15, 2023, to respond to the motion and held a hearing on May 31, 2023. *See* App.058, App.060, App.062. The district court has not yet issued an order resolving the preliminary injunction motion. The district court also has not acted upon CCST's motion, filed on June 27, 2023, to stay the effective date of the Rule pending the court's decision on the preliminary-injunction motion. *See* App.062.

While CCST respects whatever time the district court needs for its decision, the unlawful Rule should not be allowed to go into effect in the interim. In light of the imminence of that occurring, CCST moves this Court under Rule 8(a)(2) and

---

[1] Defendants oppose this motion.

the All Writs Act, 28 U.S.C. § 1651, to grant a temporary injunction pending

appeal, despite the absence of an appealable order from the district court, in order

to aid its potential appellate jurisdiction by preserving the status quo. *See FTC v.*

*Dean Foods Co.*, 384 U.S. 597, 608 (1966); *First Pentecostal Church of Holly*

*Springs v. City of Holly Springs*, 959 F.3d 669 (5th Cir. 2020) (issuing a temporary

injunction pending appeal prior to a ruling by the district court).

The Rule represents a striking arrogation of administrative power not

authorized by statute or the Constitution. In Section 455(h) of the Higher

Education Act ("HEA"), Congress granted the Department a very specific and

limited rulemaking power: to "specify in regulations which acts or omissions of an

institution of higher education a borrower may assert as a defense to repayment" to

loans made under the William D. Ford Federal Direct Loan ("Direct Loan")

program. 20 U.S.C. § 1087e(h) (emphasis added). From that single sentence, the

Department issued a sprawling rule that converts defenses into affirmative

borrower "claims" that are not subject to limitations periods and proclaims the

Department's authority to adjudicate not only borrower claims but also recoupment

actions against schools. The Department even declares the power to adjudicate

administratively borrower claims that arise under state law, such as breach of

contract. These provisions not only exceed the Department's authority but are also

unconstitutional. Only Congress can authorize such administrative adjudications,

2

and (for borrower claims against the Secretary) only Congress can waive sovereign immunity. Moreover, state law claims and recoupment actions are not public rights susceptible to administrative adjudication. Accordingly, the Rule violates Article III, the Seventh and Tenth Amendments, and principles of separation of powers and federalism. Not only is there no colorable statutory authority for the Rule, but the "major questions" doctrine prohibits an agency from claiming extraordinary and constitutionally suspect powers from obscure statutes.

The Department compounded this overreach by stacking the deck in favor of borrowers and against schools. The Rule's substantive definitions of borrower defenses include unintentional and innocent erroneous representations or omissions—imposing a form of strict liability—even absent any proof of harm to the borrower. The Rule permits claims to be brought on behalf of groups of borrowers (without traditional class-action safeguards) and creates the unfounded presumption that the entire class knew about misrepresentations or other institutional acts or omissions; relied upon them; and made attendance decisions upon them—without the need to provide an iota of proof.

Although reliance and injury is information possessed by the borrower alone, the Rule denies schools discovery or the opportunity to examine witnesses, which are standard features of administrative adjudication, thus rendering rebuttal of the presumptions practically impossible. And if a borrower defense is proven,

3

the Rule declares that the borrower's entire student debt is discharged, without any proof of what financial harm actually resulted from the institutional act or omission, and even though Congress granted the Department no rulemaking authority over discharge amounts. And in the recoupment action, the Department shifts the burden to the school to *disprove* liability, without the means to do so. The Rule's objective is to "streamline" claim approval, without regard to actual proof or statutory or constitutional authority—ultimately leaving schools and taxpayers to foot the bill for the Department's backdoor loan forgiveness program.

CCST members face immediate irreparable injury from the costs of complying with the new and unlawful regulations; from immediate subjection to an unauthorized and unconstitutional adjudicatory forum for both individual and group claims with procedures that lack due process; and from the alteration of business plans to avoid expanded liability risks.

## STATEMENT

The major provisions of the Rule pertinent to this motion are the following:

1.    *Borrower-Defense Claims*. The Rule allows for full discharge of a borrower's student loan—regardless of when it was disbursed—based on (among other things) a school's (1) misrepresentation, (2) omission, (3) breach of contract, (4) "aggressive and deceptive" recruitment methods; or (5) on reconsideration, any

state law violation. 34 C.F.R. § 685.401(b), 685.407.[2] Under this standard, a borrower does not need to establish that the misrepresentation or omission was made intentionally or even negligently. *See id*. §§ 668.71(c), 668.75.

2. *Adjudications of Borrower-Defense Claims*. The Rule authorizes the Department to adjudicate both individual and group claims. *Id.* §§ 685.402, 685.403. In the latter, each group member is presumed—without the need for individualized proof—to have reasonably been affected by their school's alleged act or omission in deciding to attend or continue attending the school. *Id.* § 685.406(b)(2). Schools are not afforded discovery or cross-examination rights to rebut this presumption, *see id.* §§ 685.405, 685.406(b)-(c), and have only 90 days to respond, *id.* § 685.405. As described below, failing to rebut this presumption makes the school presumptively liable for the resulting discharges. *See id.* § 668.125(e)(2).

3. *Full Discharge*. Under current regulations, the Department discharges the amount of a loan that compensates the borrower's financial harm. *See id*. §§ 685.206(c)(1), 685.206(e)(12) (effective until July 1, 2023), 685.222(i). The Rule would fully discharge a borrower's paid and unpaid debt on a loan if a claim is successful, regardless of the extent of harm—and even if the school's act or

---

[2] Unless otherwise noted, citations to the Code of Federal Regulations refer to the provisions of the Rule once in effect. *See* 87 Fed. Reg. 66039-73.

omission did not cause the borrowing. *See id*. § 685.401(a)-(b); 87 Fed. Reg. at 65946. Minor detriment from a school's act or omission (or presumed detriment for group claimants) can result in the discharge of a borrower's entire debt, and the Department may seek to recoup the full amount from the school.

    4.    *Closed-School Discharge.* The Rule also expands the definition of a "closed school." Under current regulations, a school closes when its "main campus or any location or branch of the main campus" "ceases to provide educational instruction in all programs." *Id.* § 685.214(a)(2)(i) (effective until July 1, 2023). The Rule amends this provision to deem a "school" (i.e., any branch or location) to be closed when it has "ceased to provide educational instruction in programs in which most students at the school were enrolled." *Id.* § 685.214(a)(2)(i). Under this new definition, if an institution were to move an instructional program from one location to another, the previous location would be considered a "closed school" if most of the students at that location were enrolled in that program. Any student who attended the "closed school" would presumptively be entitled to full discharge in a borrower-defense adjudication, *id.* § 685.401(e)—and the Department could seek to recoup the discharge from the school. *Id.* § 685.401(e).

    5.    *Recoupment Adjudications.* The Rule creates a separate adjudication process through which the Department seeks recoupment from a borrower's school to compensate the Department for a discharged loan. *See* 34 C.F.R. § 668.125. The

Rule shifts the burden to the school to disprove its liability under the new standards. *Id.* § 668.125(e)(2). Despite this new burden, the Rule provides schools no discovery or witness-examination rights. *See id.* § 668.125(d), (e)(3); *id.* § 668.117(b).

6.    *Limitations Periods.* Under current regulations, borrowers must make a claim within the applicable limitations period. Depending on when the loan was disbursed, this period generally ends three years after the borrower left the institution or six years after the asserted act or omission occurred or could have been discovered. *See id.* § 685.206(c)(3); *id.* § 685.206(e)(6) (effective until July 1, 2023); *id.* § 685.222(c), (d)(1). The Rule removes these limitations for all loans, requiring only that a borrower have an outstanding balance on the loan. *See id.* § 685.401(b); 87 Fed. Reg. at 65935. As a result, borrowers can submit claims decades after last attending a school, and schools would be required to answer them. While the Rule nominally gives the Department six years from a borrower's last date of attendance to seek recoupment, the Department can circumvent this limitation by first taking other adverse action against the school based on the same act or omission. *See id.* §§ 685.401(b)(5), 685.409(c)(3). The six-year period is also tolled in various circumstances. *See id.* § 685.409(c)(2). In light of these exceptions, a school must be prepared to defend itself against Department efforts to recoup discharges of decades-old loans.

**STANDARD**

On a motion for injunction pending appeal, as in a preliminary injunction, a court considers whether an applicant shows (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) that the threatened injury outweighs the threatened harm to the party whom it seeks to enjoin; and (4) that granting the injunction will not disserve the public interest. *See Weingarten Realty Invs. v. Miller*, 661 F.3d 904, 910 (5th Cir. 2011); *Wildmon v. Berwick Universal Pictures,* 983 F.2d 21, 23 (5th Cir. 1992).

This Court has issued emergency injunctions of this type in order to protect movants from irreparable harm. *See, e.g.*, *First Pentecostal Church of Holly Springs*, 959 F.3d at 670; *Mock v. Garland*, No. 23-10319 (5th Cir., May 23, 2023).

**ARGUMENT**

I.    **Likelihood of Success on the Merits**

A.    **The Department lacks authority to adjudicate borrower-defense "claims" or recoupment actions.**

The Rule is ultra vires because it depends on the Department's exercising an authority it does not have—to create and then adjudicate borrower claims against the United States and to adjudicate the Department's own recoupment claims against schools. Section 455(h) of the HEA requires the Department to "specify in regulations which acts or omissions of an institution of higher education a borrower may assert *as a defense* to repayment of a loan." 20 U.S.C. § 1087e(h)

8

(emphasis added). The statute does not authorize the Department to create or adjudicate new affirmative claims or to adjudicate its own efforts to recoup discharge costs from schools.

*First*, the meaning of "defense" is plain; it does not encompass an affirmative "claim." Indeed, at the time of the statute's enactment, the Department itself understood "defense" to mean "defense"—an assertion that a borrower could assert in a collection proceeding. *See, e.g.*, 59 Fed. Reg. 61664, 61671 (Dec. 1, 1994). The Rule's reliance on a Department-created "claim" against the United States is not authorized by statute.

*Second*, the Department similarly lacks authority to adjudicate claims for money against the United States. The power to adjudicate such actions must be expressly conferred by Congress. *See Nat'l Fuel Gas Supply Corp. v. FERC*, 811 F.2d 1563, 1569 (D.C. Cir. 1987); *see also Bank One Chicago, N.A. v. Midwest Bank & Trust Co.*, 516 U.S. 264, 273-75 (1996); *Coit Indep. Joint Venture v. Fed. Sav. & Loan Ins. Corp.*, 489 U.S. 561, 572-74 (1989); *Equitable Equip. Co. v. Director, Office of Worker's Comp. Programs,* 191 F.3d 630, 632-33 (5th Cir. 1999). Rulemaking authority does not imply adjudicatory authority. *See RLC Indus. Co. v. CIR*, 58 F.3d 413, 417-18 (9th Cir. 1995). Moreover, Congress must unequivocally express its intention to waive sovereign immunity in the statutory text, even for administrative adjudication. *United States v. Nordic Village, Inc.*, 503

U.S. 30, 33-34, 37 (1992); *Fed. Maritime Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 760-61 (2002). The Department can point to no such authority, much less an express and unequivocal waiver of sovereign immunity. Nor does the Department have authority to adjudicate private state-law rights, like breach of contract, that it has classified as borrower defenses. *See Stern v. Marshall*, 564 U.S. 462, 490-91 (2011); *Granfinanciera, S.A., v. Nordberg*, 492 U.S. 33, 51-52 (1989).

*Third*, the Department similarly lacks authority to adjudicate its own recoupment claims against schools. It cites Section 454(a)(3) of the HEA, which requires that a school accept financial responsibility for breaching its Program Participation Agreement with the Department. *See* 87 Fed. Reg. at 65948 (citing 20 U.S.C. § 1087d (a)(3)). This provision does not extend to discharges or authorize the Department to adjudicate and redress those breaches itself. Indeed, the fact that Congress required the Department to enter into contracts with schools indicates that it contemplated their provisions being enforced by the courts, not the Department itself. The Department has said that the discharge recovery provision of HEA Section 487(c)(1), 20 U.S.C. § 1087(c)(1), applicable to Federal Family Education Loans (FFEL), authorizes recoupment of discharges of Direct Loans by virtue of 20 U.S.C. § 1078e(a)(1). 81 Fed. Reg. 75926, 75930 (Nov. 1, 2016) (citing 20 U.S.C. § 1087(c)(1)). But the Secretary's rights against institutions under Section 487(c)(1) are not terms or conditions of FFEL loans that become terms or

conditions of Direct Loans; in any event, the statute applies only to three types of discharges (inability to complete a program because of school closure; false certification of loan eligibility; and failure to refund), and simply provides that the borrower's rights accrue to the Secretary after discharge. *See* 20 U.S.C. § 1087(c)(1). That rationale would not justify the current Rule, which is not so limited. In any event, Congress has not authorized the Department to adjudicate its own recoupment claims.

The alternative ground for recoupment that the Department has asserted is the common-law right to recover damages for breach of fiduciary authority. 81 Fed. Reg. at 75931-32. That theory cannot support broad recoupment rights (schools are not agents or fiduciaries of the Department in recruiting students or in most communications), but regardless, Congress never authorized the Department to adjudicate common-law causes of action, and, indeed, could not do so. Even Congress cannot "withdraw from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law." *Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. 272, 284 (1855). And the Seventh Amendment guarantees the right to a jury in actions for monetary recovery at common law, including actions by the Government. *See Tull v. United States*, 481 U.S. 412, 417, 419-20 (1987); *Jarkesy v. SEC*, 34 F.4th 446, 451 (5th Cir. 2022). So, even if

11

Congress had wanted to authorize the Department both to seek and to adjudicate recoupment claims against schools, it could not constitutionally have done so.

*Finally*, under the major questions doctrine, no rational reading of the statutes cited by the Department would conclude that "Congress in fact meant to confer the power the agency has asserted." *West Virginia v. EPA*, 142 S. Ct. 2587, 2608 (2022). Delegations of such extraordinary powers as the Department asserts—which could cancel many billions of dollars of federal student loans and then impose existential liability on potentially thousands of Title IV schools—should not be found in "ancillary" and "rarely used" statutory provisions such as Section 455(h) of the HEA. *See id.* at 2610-11; *see also Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 141 S. Ct. 2485, 2489 (2021) (holding that an economic impact of $50 billion had vast significance). As the Department noted, Section 455(h) defenses were "rarely used prior to 2015." 87 Fed. Reg. at 65979. They should not, therefore, serve as the basis for the dramatically expanded authority that the Department has since asserted.

**B.     The Rule's borrower defenses, evidentiary presumptions, and full-discharge remedy are unlawful.**

*First*, Section 455(h) of the HEA requires the Department to "specify in regulations *which acts or omissions* of an institution of higher education" can be asserted by a borrower as a defense to repayment. 20 U.S.C. § 1087e(h) (emphasis

added). This requires the Department to define actual acts or omissions with enough specificity for regulated parties to conform their conduct accordingly.

The Rule does not do that. For instance, it newly prohibits "[a]ggressive and deceptive recruitment tactics or conduct," but it does not define that term, listing only non-exclusive examples. *See* 34. C.F.R. § 668.501. It also prohibits *any* omission of a fact that a reasonable person "would have considered . . . in making a decision to enroll or continue attendance," but it does not define which disclosures a school must make to avoid a violation. *See id.* § 668.75. Later defining these terms through guidance documents or adjudicatory precedent is not enough— Section 455(h) requires that specific acts or omissions be set out "*in regulations*." 20 U.S.C. § 1087e(h) (emphasis added). The Rule fails to comply with that mandate.

*Second*, the Administrative Procedure Act ("APA") requires the Department to reach reasonable conclusions and to explain its reasoning rationally. *See* 5 U.S.C. § 706(2)(A); *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

The Department did not meet that requirement with respect to the Rule's strict-liability standard for misrepresentations and omissions. Under that standard, a borrower can secure a full discharge without showing a school's intent to deceive—indeed, without showing any form of culpability (even negligence). *See*

34 C.F.R. §§ 668.71(c), 668.75. This is in stark contrast to common-law fraud, which requires proof of intent. *See United States ex rel. Schutte v. SuperValu Inc.*, 143 S. Ct. 1391, 1400 (2023). Because the Rule presumes a school's liability for a discharged loan, *see* 34 C.F.R. § 668.125(e)(2), this strict-liability standard dramatically increases the risk that a school will be liable based on innocent misstatements or omissions made by its employees or contractors. Because the Rule no longer provides for partial discharges, *see* 34 C.F.R. § 685.401(a)-(b), this liability will extend to the full amount the school received in exchange for service to the student (and possibly more, if the student used loan disbursements for living expenses). Under the Rule, the Department can also revoke a school's participation in Title IV based on the same strict-liability standard, even without proof of detriment to any particular borrower. *See id.* § 668.71(a)(1)-(4).

The Department does not reasonably justify this standard. It claims that "[r]equiring intent would place too great a burden on an individual borrower." 87 Fed. Reg. at 65921. But it did not explain how that burden—which plaintiffs in any common-law fraud action must bear—could rationally outweigh the dramatically increased liability faced by schools whose employees or contractors make innocent mistakes. The Department's second rationale is that, "if the action resulted in detriment to the borrower that warrants relief, the Department does not believe whether it was taken with knowledge or intent should be relevant." *Id.* But that

14

reasoning does not account for the bulk of schools' additional liability risk—group claims, in which injury is presumed, and closed-school claims, in which even minor detriment is presumed to warrant full discharge. *See* 34 C.F.R. §§ 685.401(e), 685.406(b)(2). Especially in light of those presumptions, the Department's move to provide potentially existential liability without requiring proof of intent was not "reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021). It was thus arbitrary and capricious.

*Third*, these presumptions in favor of borrowers in group and closed-school claims are ultra vires, arbitrary and capricious, and violate due process. In group claims, the Rule relieves borrowers of the need to prove that a school's alleged act or omission was the cause of detriment, and instead creates an extraordinary "rebuttable presumption that the act or omission giving rise to the borrower defense affected each member of the group in deciding to *attend, or continue attending*, the institution, and that such reliance was reasonable," 34 C.F.R. § 685.406(b)(2) (emphasis added). And "[f]or borrowers who attended a closed school shown to have committed actionable acts or omissions that caused the borrower detriment, there will be a rebuttable presumption that the detriment suffered warrants relief under this section." *Id.* § 685.401(e).

Because the Department has no authority to adjudicate such claims, *see supra* 8-12, it has no authority to establish evidentiary presumptions. But even if it

did, a presumption is arbitrary and capricious if there is no rational nexus between proven and presumed facts. *See, e.g., Chemical Mfrs. Ass'n v. Dep't of Transp.*, 105 F.3d 702, 703-05 (D.C. Cir. 1997). The fact that a borrower is part of a group claim in which a violation is proven does not make it so probable that each borrower knew about it, reasonably relied on it, and made an attendance decision based upon it that actual proof becomes unnecessary. Nor does the fact that a borrower's school is "closed," under the Rule's new definition, make it more likely that the borrower's detriment warrants a discharge of the full loan amount.

The group-claim procedure targets proprietary schools, who are anticipated to be the subject of 75% of the group claims, 87 Fed. Reg. at 65993. The Department remarkably has declared that the new standards and group process in tandem will have the "benefit" of driving enrollment away from proprietary schools. 87 Fed. Reg. at 65996. Accordingly, the group-claim procedures are slanted against the schools, and the Rule affords them no discovery or witness-examination rights. Evidence concerning a borrower's reliance and injury is fully within the possession and control of the borrower, meaning that schools facing recoupment have no meaningful opportunity to rebut the presumptions against them. This violates due process. Given the high private stakes for schools, the high risk of error from slanted procedures and meritless claims, and the value of

16

traditional safeguards like discovery and trial, the procedures provided under the Rule do not pass muster under *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

*Finally*, the Rule's expanded definition of "closed school" stretches beyond the limits of the HEA's text, which contemplates discharge of a loan when a student "is unable to complete the program in which such student is enrolled due to the *closure* of the *institution*." 20 USC § 1087(c)(1) (emphasis added). The Rule considers a school "closed" when it has "ceased to provide educational instruction in programs in which most students at the school were enrolled." 34 C.F.R. § 685.214(a)(2)(i). The Rule also maintains the current regulatory definition of "school," for purposes of a closed-school discharge, as being the "main campus or any location or branch of the main campus." *Id.* The HEA, by its plain text, refers to an institution that is no longer open. *See Closed*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/closed (defining "closed" to mean "not open"). The Rule's contrary definition is ultra vires.

## II.    Irreparable Harm

"[I]t is not so much the magnitude but the irreparability [of a harm] that counts for purposes of a preliminary injunction." *Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 575 (5th Cir. 1974). To qualify as irreparable, such harm need only "be 'more than de minimis.'" *Rest. L. Ctr. v. U.S. Dep't of Lab.*, 66 F.4th

593, 600 (5th Cir. 2023) (quoting *Louisiana v. Biden*, 55 F.4th 1017, 1035 (5th Cir.

2022)).

The record shows that CCST's many members participating in the Direct

Loan program ("Participating Schools") face irreparable harm if implementation of

the Rule is not enjoined pending appeal. Participating Schools face (1) compelled

compliance and attendant compliance costs; (2) alteration of business plans to

avoid closed-school discharge liability; and (3) imminent threats of being subject

to unlawful adjudications.

### A.     Compelled Compliance and Compliance Costs

Participating Schools are irreparably injured by forced compliance with the

Department's rules upon the Rule's July 1, 2023 effective date.  These unlawful

rules, attended with potentially massive liability, burden the school's

constitutionally protected non-fraudulent speech to students. *See Pacific Frontier v.*

*Pleasant Grove City*, 414 F.3d 1221, 1236 (10th Cir. 2005).

Furthermore, "complying with a regulation later held invalid almost *always*

produces the irreparable harm of nonrecoverable compliance costs." *Texas v. EPA*,

829 F.3d 405, 433-34 (5th Cir. 2016) (quoting *Thunder Basin Coal Co. v. Reich*,

510 U.S. 200, 220-21 (1994) (Scalia, J., concurring in part and in the judgment)).

This is because the federal government's sovereign immunity prevents regulated

parties from recovering compliance costs, making those costs irreparable. *See*

18

*Wages & White Lion Invs., L.L.C. v. U.S. Food & Drug Admin.*, 16 F.4th 1130, 1142 (5th Cir. 2021).

Participating Schools are threatened with at least two types of compliance costs while the appeal is pending.

*First*, Participating Schools will need to retain more records and to retain them indefinitely. This is because (1) the Rule makes schools strictly liable for even innocent misstatements and omissions made by school employees or contractors, as well as for "aggressive and deceptive" recruitment methods, requiring schools to defensively record and preserve a much broader set of communications with students and prospective students; and (2) the Rule removes the limitations period for borrower-defense claims, allowing borrowers to assert claims potentially decades after attending a school. *See* Tr. of Prelim. Inj. Hr'g 8:8-13, 8:22-9:1, 18:19-24, 19:17-22, 22:11-24, 27:15-21 (Dreyfus) [App.027-028, App.036-037, App.040, App.045]; *id.* 45:19-46:19 (Jones) [App.046-047]; Arthur Decl.) ¶¶ 16-20 [App.004-006]; Shaw Decl. ¶¶ 20-21 [App.016-017]. This type of defensive recordkeeping is an irreparable harm. *See Rest. L. Ctr.*, 66 F.4th at 598-99 (finding that additional recordkeeping necessary to defend against potential enforcement of a new regulation is an irreparable harm).

Even with the Rule's six-year limitations period on recoupment actions, a school may still be called on to defend its reputation—and the value of its alumni's

credentials—in a borrower-defense adjudication concerning much older loans. The Department may also seek recoupment outside of the Rule's six-year limitations period if it first takes adverse action against the school by, for example, denying its Title IV recertification. 34 C.F.R. § 685.409(c)(3). Given these possibilities, schools must be prepared to defend themselves against allegations that look back decades.

Even under the Rule's six-year recoupment period, loans that currently can only be discharged and recouped within three years of the borrower's attendance can now be discharged and recouped within six years. *See supra* 7. At a minimum, this requires schools to extend their record retention for these borrowers by three years, which by itself qualifies as an irreparable harm. *See Rest. L. Ctr.*, 66 F.4th at 598-600.

*Second*, Participating Schools must train and hire staff to meet this additional recordkeeping burden. They must also train staff on the Rule's strict-liability standard for misrepresentation and omissions, which prohibits even innocent misstatements and omissions by school employees and contractors, as well as the new prohibition on "aggressive and deceptive" recruiting methods. *See* Hr'g Tr. 8:8-13, 8:22-9:1, 9:11-12, 18:19-24, 18:25-19:9, 19:17-22, 19:22-20:13 (Dreyfus) [App.026-027, App.036-038]; Arthur Decl. ¶¶ 16-20 [App.004-006]; Shaw Decl. ¶¶ 20-21 [App.016-017].

**B.      Change in Conduct to Avoid Risk of Closed-School Liability**

The Rule's dramatic expansion of closed-school discharge liability has already required at least one Participating School to abandon plans to open a campus in Texas. *See* Hr'g Tr. 9:12-20, 10:6-8 [App.027-028]. In addition, the expanded definition of a "closed school," combined with the presumptive entitlement to full discharge for borrowers who attended a "closed school," *see supra* 6, has forced the same school to avoid consolidating campuses and fully utilizing its upgraded facilities. Hr'g Tr. 11:4-12:2 (Dreyfus) [App.029-039].

**C.      Threat of Unlawful Adjudications**

Participating Schools face an imminent threat of borrower-defense claims. This is clear from the hundreds of thousands of borrower-defense claims against approximately 4,000 schools that were filed after the bar to discharge was lowered in the *Sweet v. Cardona* settlement, App.234—including (to a virtual statistical certainty) at least one CCST member school.[3] Schools will be required to respond to borrower-defense claims within 90 days in order to preserve their reputations and avoid presumptive liability in a later recoupment proceeding. *See* Hr'g Tr.

---

[3] Because this is about 65 percent of the 6,200 Title IV participants, see Dep't of Educ., 2023-24 Federal School Code List of Participating Schools (November 2022), https://fsapartners.ed.gov/knowledgecenter/library/federal-school-code-lists/2022-10-31/2023-24-federal-school-code-listparticipating-schools-november-2022, the probability that at least one of CCST's 54 Participating Schools is among these 4,000 schools is about 99.9999 percent, or $(1 - (1-0.645)^{54})$.

15:19-16:11 (Dreyfus) [App.033-034]; *see* 34 C.F.R. § 685.405 (requiring schools to participate in borrower defense proceedings at pain of forfeiting defense to the claim).

Agency adjudication of borrower-defense or recoupment claims before the Department is unlawful, and violation of a litigant's "independent right to adjudication in a constitutionally proper forum" is injury, *Thomas v. Union Carbide Agric. Prod. Co.*, 473 U.S. 568, 579 (1985), that by definition is irreparable. *See also Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 542-43 (5th Cir. 2008) (violation of procedural rights is irreparable injury). Furthermore, in bracing for the volume of likely borrower-defense claims—and the significant liability that could follow—Participating Schools will need to conserve and divert resources in order to adhere to the Department's financial-responsibility regulations. *See* Hr'g Tr. 96:14-16, 98:14-99:7 [App.049, App.051-052]; 34 C.F.R. § 668.171-75; 20 U.S.C. § 1099c(c).

## III. Harm to the Department

The Department has not explained how maintaining the status quo would cause it any harm. *See* App.283. The short period of an injunction pending appeal reduces the risk of substantial harm even further. Nor has the Department identified why it could not achieve the Rule's putative benefits after this case concludes,

should it ultimately prevail on the merits. This factor thus favors an injunction. *See Weingarten Realty Invs. v. Miller*, 661 F.3d 904, 913 (5th Cir. 2011).

## IV.    The Public Interest

Enjoining the Rule pending appeal would favor the public interest by avoiding harms to students, either through fewer resources being available for programs or through necessary increases in tuition. *See* Hr'g Tr. 98:14-99:7 [App.051-052]. The costs of compliance, and the reserves required to prepare for potential liabilities, cannot be absorbed entirely by a school's profit margin. *See id*. And should a Participating School be put to the "Hobson's choice" of enduring the Rule's requirements or leaving Title IV, the interests of current students—many of whom benefit from the Direct Loan Program and may have difficulty accessing private financing—"would be seriously compromised." *See United States v. Baylor Univ. Med. Ctr.*, 711 F.2d 38, 40 (5th Cir. 1983) (making a similar finding with respect to a hospital's choice whether to give up Medicare and Medicaid funding).

## CONCLUSION

For the forgoing reasons, CCST respectfully asks that the Court grant its emergency motion for injunction pending appeal, preferably before the Rule goes into effect on July 1, 2023.

Dated:  June 30, 2023                    Respectfully submitted,

                                            */s/ Stephen B. Kinnaird*

Philip Vickers                          Allyson B. Baker*
Katherine Hancock                       Stephen Kinnaird
CANTEY HANGER LLP                       Michael Murray*
600 West 6th Street, Suite 300          Sameer P. Sheikh*
Fort Worth, TX 76102                    Tor Tarantola*
pvickers@canteyhanger.com               PAUL HASTINGS LLP
(817) 877-2800                          2050 M Street NW
                                        Washington, DC 20036
                                        stephenkinnaird@paulhastings.com
                                        (202)-551-1700

                                        *Counsel for Plaintiff-Appellant*

   * Application for admission or readmission pending.

## CERTIFICATE OF SERVICE

    Pursuant to Fed. R. App. P. 25(d) and 5th Cir. R. 25.2.5, I hereby certify that

on June 30, 2023, I caused the foregoing motion to be served by email and courier

on the following counsel for Defendants-Appellees:

    Christine L. Coogle (christine.l.coogle@usdoj.gov)
    Cody T. Knapp (cody.t.knapp@usdoj.gov)
    R. Charlie Merritt (robert.c.merritt@usdoj.gov)
    U.S. Department of Justice
    Civil Division
    Federal Programs Branch
    1100 L St. NW
    Washington, D.C. 20005

                                        */s/ Stephen B. Kinnaird*
                                         Stephen B. Kinnaird
                                         *Attorney for Plaintiff-Appellant*

**CERTIFICATE OF CONFERENCE**

I hereby certify that on June 30, 2023, Allyson Baker, counsel for Plaintiff-Appellant, conferred by telephone with Cody Knapp, counsel for Defendants-Appellees, about the foregoing motion. Defendants oppose the relief requested in this motion.

*/s/ Stephen B. Kinnaird*
Stephen B. Kinnaird
*Attorney for Plaintiff-Appellant*

**CERTIFICATE OF COMPLIANCE WITH 5TH CIR. R. 27.3**

I certify that the facts supporting emergency consideration of this motion are true and complete.

*/s/ Stephen B. Kinnaird*
Stephen B. Kinnaird
*Attorney for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

This document complies with the word limit of Fed. R. App. P. 27(d)(2)(a) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), it contains 5,200 words. This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and 5th Cir. R. 32.1 and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font. Additionally, I certify that any required redactions have been made in compliance with 5th Cir. R. 25.2.13.

*/s/ Stephen B. Kinnaird*

Stephen B. Kinnaird

*Attorney for Plaintiff-Appellant*

Dated: June 30, 2023